Howard T. Hogan, J.
In this eminent domain proceeding the claimants seek an order opening the partial final decree to permit claimants to prove certain consequential damages allegedly sustained by virtue of the acquisition. The following facts appear from the affidavits submitted.
The claimants, Helen and John Retzler, purchased a gas station property on Union Avenue and Farmingdale Turnpike prior to 1965.
In May of 1965, the county condemned the bed of Union Avenue for purposes of realigning and relocating that street. It appears that that portion of Union Avenue which was adjacent to claimants’ property was closed as a result of the acquisition.
The county asserts that claimant had no title to the bed of Union Avenue. Sometime in 1967 or 1968, claimants were advised by their then tenant that work was being done in the bed of the street. Claimants consulted with their attorney, who thereupon consulted claimants’ present attorneys, who in turn made inquiry of the County Attorney’s office. That office, by letter dated May 27,1968, stated that the subject parcels did not appear to be in the taking area and suggested that inquiry be made of the State. Thereafter, and on October 16, 1968, claimants mailed an executed notice of claim, receipt of which was acknowledged the following day.
It appears that thereafter correspondence between the County Attorney’s office and claimants’ attorneys contemplated the pendency of this claim.. As recently as April 9, 1970, claimants were advised by the County Attorney that a trial date would have to be set.
On the September calendar call, claimants’ attorneys were first advised that a partial final decree had been entered on March 22, 1968, in which the court made a nominal award of $1 to the court and trust fund based upon the fact that the owner of Parcel 37 X was unknown.
Claimant does not contend that it has title to the bed of Union Avenue. Rather, they seek compensation for the loss of their rights of light, air and access.
Generally speaking, loss of access does not generate compensation if other suitable access is available, such as where the property has more than one street frontage. (Matter of *978 Smith v. Gagliardi, 2 Misc 2d 1005, affd. 2 A D 2d 698; see, also, Single v. State of New York, 186 Misc. 452, affd. 271 App. Div. 1053, affd. 297 N. Y. 665.) Whether or not remaining access is “ suitable ” poses a sometimes difficult question of fact. Suitability must be determined in light of highest and best use (Priestly v. State of New York, 23 N Y 2d 152). A gasoline service station fronting on two streets might not still have access suitable to its highest and best use after one street is closed.
Cases involving street closings and interference with access may be read together. (2A Nichols, Eminent Domain [3d Ed.], § 6.4442[1].)
The rights of an abutter in New York are treated in the 1882 case of Story v. New York El. R. R. Co. (90 N. Y. 122) which allowed compensation for the taking of the abutter’s rights to have the public street remain as an open public street.
In discussing the Story case, Nichols, Eminent Domain states (vol. 3, § 10.221 [2], pp. 368-370) as follows: “ The doctrine has been taken up elsewhere very extensively * * * that * * * if the public has taken the fee, there have attached automatically to the abutting lands easements of access, light and air from the street, which are taken in the constitutional sense by the use of the street in a manner not constituting a proper exercise of the highway easement and interfering with such access, light and air. It has been said that an owner of property abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public. ’ ’
It does not appear who in fact owns the fee or whether the existing road had been dedicated to the public use. It does appear, however, that claimant herein may have rights as an abutting owner and could be entitled to compensation for the extinguishment of those rights. The procedure to be followed, however, is somewhat difficult of solution.
A final decree was entered before the claim was filed, and a final decree under subdivision d of section 11-40.0 of the Nassau County Administrative Code (L. 1939, chs. 272, 701-709, as amd.) is final and- conclusive. Claimants contend that the decree can be reopened since they did not receive notice as required by Schroeder v. City of New York (371 U. S. 208) and other cases. However, claimants point to no case in which special notice was required to be given to an abutter who did not own any real property within the taking area. Section 11-27.0 of the Administrative Code, as amended following the Schroeder *979 case, provides that notice of the acquisition shall be given, inter alia, by mailing notice to the last known owner of record.
The court holds that an individual who does not own property within the taking area is not entitled to be mailed actual notice. It would be a product of strained reasoning to hold the municipality responsible for personally notifying every individual who might have basis for filing a claim. Clearly, every owner of property shown on a vesting map should be afforded actual notice. All others, however, are constitutionally reached through the required advertisement and the posting of handbills on or near the property to be acquired.
Since the court finds that actual notice was not required, it finds no basis for opening the final decree due to lack of jurisdiction. Had the claim been filed prior to the entry of the final decree, the court could have determined the questions involved in this proceeding. That procedure not being available, claimants must seek their relief in another manner, and may proceed to invoke a procedure sometimes known as ‘ ‘ inverse condemnation.” (See 17 Carmody-Wait 2d, New York Practice, § 108:274, p. 614.)
Claimants are therefore given the opportunity to serve a petition for injunction and other relief. Claimants are further instructed, if they be so advised, to notify the clerk of this part when the injunction action is ready for trial. Due to the both sides’ erroneous assumption that this case has been awaiting trial, the interests of justice require a prompt determination.